**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALBERTO MARTINEZ, MELITON MARTINEZ, | ) | |
| DANIEL MARTINEZ, SOFIA MARTINEZ, MARTIN | ) | |
| MARTINEZ, and FELIPE GARCIA, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.  09 C 5938 |
| | ) | |
| CITY OF CHICAGO, CHICAGO POLICE OFFICERS | ) | |
| DOUGLAS ANDERSON, Star # 6325, ALLYSON | ) | |
| BOGDALEK,  Star # 18598, JOSEPH SHINE, Star # 2293,) | | |
| CHRISTOPHER LOFGREN, Star # 3600, DANIEL | ) | |
| O'DONNELL, Star # 1927, BRIAN PURTELL, | ) | |
| Star # 3217, JILL NEWMAN, Star # 16481, | ) | |
| RUTH PEREZ, Star # 17745, DANIEL LOPEZ, | ) | |
| Star # 18707, PATRICK KELLY, Star # 19397, | ) | |
| CHRIS BARD, Star # 6772, and Assistant Corporation | ) | |
| Counsel YVONNE LAGRONNE, | ) | |
| | ) | |
| Defendants. | ) | JURY DEMANDED |

## SECOND AMENDED COMPLAINT

NOW COMES the Plaintiffs, ALBERTO MARTINEZ, MELITON MARTINEZ,

DANIEL MARTINEZ, SOFIA MARTINEZ, MARTIN MARTINEZ, AND FELIPE GARCIA,

by and through one of their attorneys, Jared Kosoglad, Jared S. Kosoglad, P.C. and for their

Second Amended Complaint against defendants, CITY OF CHICAGO AND CHICAGO

POLICE OFFICERS DOUGLAS ANDERSON, Star # 6325, ALLYSON BOGDALEK, Star #

18598, JOSEPH SHINE, Star # 2293, CHRISTOPHER LOFGREN, Star # 3600, DANIEL

O'DONNELL, Star # 1927, BRIAN PURTELL, Star # 3217, JILL NEWMAN, Star # 16481,

RUTH PEREZ, Star # 17745, DANIEL LOPEZ, Star # 18707, PATRICK KELLY, Star # 19397, CHRIS BARD, Star # 6772, and Assistant Corporation Counsel YVONNE LAGRONNE, state as follows:

## INTRODUCTION

1.      This is a civil action seeking damages against defendants for committing acts under color of law, and depriving plaintiffs of rights secured by the Constitution and laws of the United States.  In sum, defendants invaded the plaintiffs' family home without any legal justification, arrested several family members on false charges, brutalized several family members, maliciously prosecuted several family members on false charges, destroyed material exculpatory evidence during the course of the prosecution, otherwise committed due process violations, and conspired between themselves to accomplish the same.  These actions, while individual constitutional violations, were mostly taken pursuant to policies and practices of defendant City of Chicago.  Subsequent to said violations, the police department continued their harassment of the Martinez family through further intrusions on their Fourth Amendment rights.

## JURISDICTION

2.      The jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 42 U.S.C., § 1983; the judicial code 28 U.S.C., § 1331 and 1343 (a); the Constitution of the United States; and pendent jurisdiction as provided under U.S.C., § 1367(a).

## PARTIES

3.      At all times mentioned herein, plaintiffs Alberto Martinez, Meliton Martinez, Daniel Martinez, Sofia Martinez, Martin Martinez, and Felipe Garcia were residents of Cook County

and within the jurisdiction of this Court.

4.    Defendants, CHICAGO POLICE OFFICERS DOUGLAS ANDERSON, Star # 6325,

ALLYSON BOGDALEK, Star # 18598, JOSEPH SHINE, Star # 2293, CHRISTOPHER

LOFGREN, Star # 3600, DANIEL O'DONNELL, Star # 1927, BRIAN PURTELL, Star # 3217,

JILL NEWMAN, Star # 16481, RUTH PEREZ, Star # 17745, DANIEL LOPEZ, Star # 18707,

PATRICK KELLY, Star # 19397, and CHRIS BARD, Star # 6772, (hereinafter the "police

defendants") were, at the time of this occurrence, duly licensed Chicago Police Officers. They

engaged in the conduct complained of while on duty in the course and scope of their employment

and under color of law. They are sued in their individual capacities.

5.    DEFENDANT YVONNE LAGRONNE was, at the time of this occurrence, a prosecuting

attorney who represented the City of Chicago in the Martinez family prosecution. She engaged

in the conduct complained of under color of law, and within the scope of her employment.

6.    Defendant CITY OF CHICAGO, ("City") is a municipal corporation duly incorporated

under the laws of the State of Illinois, and is the employer and principal of the police officer

defendants and Assistant Corporation Counsel Yvonne Lagronne.

**FACTS**

7.    The Martinez family celebrated Sofia Martinez' cooking at the family home on Tuesday,

September 23, 2008.

8.    Sofia Martinez prepared a feast, while men of the family drank beer in the backyard,

including Plaintiffs Alberto Martinez, Meliton Martinez, Felipe Garcia, and other family.

9.

**Alberto Martinez**

10.     Without any lawful basis, Defendant Anderson entered the Martinez family property.

11.     Without probable cause or any other lawful basis, Defendant Anderson performed a seizure of Alberto Martinez' person.

12.     Without any lawful basis, Defendants Anderson, Bogdalek, Daniel Lopez, Chris Bard and other Chicago police officers employed excessive and unnecessary force against Alberto Martinez.

13.     Without any lawful basis, Defendant Shine or in the alternative Defendant O'Donnell shot Alberto Martinez in the back with a Taser, thus employing excessive and unreasonable force against Alberto Martinez.

14.     Alberto Martinez sustained a massive laceration to his forehead that required hospitalization, bruises to his head and body, and other bloody and nonfatal injuries.

15.     Defendants Anderson, Bogdalek, Bard, Perez, and O'Donnell falsely arrested Alberto Martinez without probable cause or any other lawful basis

16.     The Chicago Fire Department transported Alberto Martinez to the hospital in an ambulance.

17.     Alberto Martinez spent multiple weeks in custody without knowing whether he would ever be released.  After multiple weeks in custody, Alberto's family posted bail.

18.     Alberto Martinez was falsely charged with various misdemeanor offenses, including but not limited to battery, assault, resisting arrest, and drinking on the public way.

19.     At trial, Honorable Judge Thomas Donnelly of the Cook County Circuit Court made a

directed finding against the State of Illinois and City of Chicago on all charges related to Alberto Martinez based on the failure of Defendants Anderson, Bogdalek, and Purtell to testify credibly; the charges against Alberto Martinez were dismissed in a manner indicative of Alberto's innocence.

20.     An apprentice roofer until the defendants persecuted him, Alberto Martinez lost his job, suffered the deprivation of his liberty and the unlawful taking of his person and property.  In addition, the violations proximately caused Alberto severe physical injury, great mental anguish and humiliation, exposed him to public scandal and disgrace, lost wages, anxiety, panic attacks, fear, and caused him to incur various expenses, all to his damage.

## Meliton Martinez

21.     Without any lawful basis, Defendants Shine, Purtell, and other Chicago Police Officers employed excessive and unreasonable force against Meliton Martinez.

22.     Defendants Shine, Purtell, Newman, and Lofgren falsely arrested Meliton Martinez without probable cause or any other lawful basis.

23.     Defendant Shine and other Chicago Police Officers, without probable cause or any other lawful basis, entered the Martinez family home.

24.     Meliton Martinez visited the hospital upon his release from custody.

25.     Meliton Martinez spent one night in custody.

26.     Meliton Martinez was charged with the misdemeanor offense of resisting arrest.

27.     At trial, Honorable Judge Thomas Donnelly of the Cook County Circuit Court made a directed finding against the State on all charges related to Meliton Martinez based on the failure

of Defendants Anderson, Bogdalek, and Purtell to testify credibly; the charges against Meliton Martinez were dismissed in a manner indicative of Meliton's innocence.

28.     Meliton Martinez suffered numerous injuries on account of the Defendants' conduct, suffered the deprivation of his liberty and the unlawful taking of his person and property. In addition, the violations proximately caused Meliton severe physical injury, great mental anguish and humiliation, exposed him to public scandal and disgrace, lost wages, anxiety, panic attacks, fear, and caused him to incur various expenses, all to his damage.

**Sofia Martinez**

29.     During the brutal attacks on her family members, Plaintiff Sofia Martinez recorded information about the police at the scene on paper.

30.     Without any lawful basis, Defendants Bogdalek, Bard, and other Chicago Police Officers employed unnecessary and excessive force against Sofia Martinez.

31.     Defendant Bard spit at Sofia Martinez.

32.     Defendants Anderson and Bogdalek arrested Sofia Martinez without probable cause or any other legal basis.

33.     Defendant Shine and other Chicago Police Officers, without probable cause or any other lawful basis, entered the Martinez family home.

34.     Sofia Martinez visited the hospital upon her release from custody.

35.     Sofia Martinez spent one night in custody.

36.     Sofia Martinez was charged with various misdemeanor offenses, including but not limited to battery, resisting arrest, and aggravated assault.

37.     At trial, Honorable Judge Thomas Donnelly of the Cook County Circuit Court made a directed finding against the State on all charges related to Sofia Martinez based on the failure of Defendants Anderson, Bogdalek, and Purtell to testify credibly, except for the misdemeanor battery charge.

38.     Judge Donnelly, in his ruling on the defendant Sofia Martinez' motion for a directed finding, noted that Officer Bogdalek's testimony was not contradicted by the officers.  Officer Anderson testified alternatively that he did not witness and could not remember the attack on his partner by Sofia Martinez, thus avoiding any potential conflict.

39.     The defense rested without the presentation of any evidence, and the Judge made a finding of not guilty on the battery charge against Sofia Martinez based on the State's witnesses' lack of credibility; the charges against Sofia Martinez were dismissed in a manner indicative of Sofia's innocence.

40.     Sofia Martinez suffered numerous injuries on account of the Defendants' conduct, suffered the deprivation of her liberty and the unlawful taking of her person and property.  In addition, the violations proximately caused Sofia severe physical injury, great mental anguish and humiliation, exposed her to public scandal and disgrace, anxiety, panic attacks, fear, and caused her to incur various expenses, all to her damage.

**Felipe Garcia**

41.     Without any lawful basis, Defendant Shine and other Chicago Police Officers employed excessive and unnecessary force against Felipe Garcia.

42.     Defendants Shine, Newman, Perez, Bogdalek, Kelly, Purtell, Lofgren, Anderson, and

Bard falsely arrested Felipe Garcia without probable cause or any other lawful basis.

43.    Felipe Garcia spent one night in custody.

44.    Felipe Garcia was falsely charged with resisting arrest.

45.    The family trial was continued based on representations made by police officers that Defendant Shine was on furlough but would be available on the next court date.  At the next court date, Defendant Shine again failed to appear, and the Judge dismissed the charges against Felipe Garcia.

46.    In missing said court dates, Defendant Shine intentionally disregarded subpoenas to appear from the State and the Defense.

47.    Upon information and belief, Defendant Shine failed to appear in an intentional effort to deprive the defense of material exculpatory and/or impeachment evidence.

48.    The charges against Felipe Garcia were dismissed in a manner indicative of his innocence.

49.    Felipe Garcia suffered numerous injuries on account of the Defendants' conduct, suffered the deprivation of his liberty and the unlawful taking of his person and property.  In addition, the violations proximately caused Felipe physical injury, great mental anguish and humiliation, exposed him to public scandal and disgrace, lost wages, anxiety, panic attacks, fear, and caused him to incur various expenses, all to his damage.

**Martin Martinez**

50.    Without probable cause or any other lawful basis, Defendants Bard, Perez, and Kelly falsely arrested Martin Martinez.

51.     Chicago Police Officers named herein employed excessive and unnecessary force against Martin Martinez at the scene of his unlawful arrest, who upon information and belief were the arresting officers, and Defendant O'Donnell employed excessive and unnecessary force against Martin Martinez at the police station.

52.     At the police station subsequent to Martin Martinez' unlawful arrest, Martin Martinez was visited by counsel.

53.     Subsequent to the attorney's arrival at the police station, police made Martin Martinez wait for approximately one hour before a meeting was arranged.  During the aforementioned hour, upon information and belief, Defendant O'Donnell choked and brutalized Martin Martinez, while other police officers watched and obstructed the brutality.

54.     At the insistence of Chicago Police, the meeting was arranged between Martin Martinez and his attorney with Defendant Perez and another Chicago Police Officer present.

55.     Prior to the meeting, Defendant Perez admonished Martin Martinez words to the effect that he should not report any misconduct to his attorney.

56.     Upon information and belief, the police presence was effectuated to intimidate and silence Plaintiff Martin Martinez from reporting the excessive force and other misconduct committed by Chicago Police.

57.     Martin Martinez spent the night in custody and was ultimately provided a station adjustment.

58.     Martin Martinez was charged with various offenses that were never pursued by the prosecution.

59.     Upon information and belief, Defendants Bard, Perez, and Kelly charged the minor

Plaintiff in this manner to avoid legal scrutiny over their false arrest and malicious charges.

60.     The charges against Martin Martinez were disposed of in a manner indicative of Martin's

innocence.

61.     Martin Martinez suffered numerous injuries on account of the Defendants' conduct,

suffered the deprivation of his liberty and the taking of his person and property.  In addition, the

violations proximately caused Martin physical injury, great mental anguish and humiliation,

exposed him to public scandal and disgrace, anxiety, panic attacks, fear, and caused him to incur

various expenses, all to his damage.

**<u>Daniel Martinez</u>**

62.     Without probable cause or any other lawful basis, Defendants Purtell, Newman, Perez,

Bogdalek, Kelly, Lofgren, Anderson, and Bard arrested Daniel Martinez on false charges for

which the Defendants knew no probable cause existed.

63.     Without any lawful basis, Chicago Police Officers employed excessive and unnecessary

force against Plaintiff Daniel Martinez, who upon information and belief were the arresting

officers.

64.      Daniel Martinez spent the night in custody and was ultimately provided a station

adjustment.

65.     Daniel Martinez was charged with various offenses that were not pursued by the

prosecution.

66.     Upon information and belief, Defendants Purtell, Newman, Perez, Bogdalek, Kelly,

Lofgren, Anderson, and Bard charged the minor Plaintiff in this manner to avoid legal scrutiny over the arrest and charges.

67.    The charges against Daniel Martinez were disposed of in a manner indicative of Daniel's innocence.

68.    Daniel Martinez suffered numerous injuries on account of the Defendants' conduct, suffered the deprivation of his liberty and the taking of his person and property.  In addition, the violations proximately caused Daniel severe physical injury, great mental anguish and humiliation, exposed him to public scandal and disgrace, anxiety, panic attacks, fear, and caused him to incur various expenses, all to his damage.

**<u>Police Station</u>**

69.    At the police station the night of September 23, 2008 through the morning of September 24, 2008, several of the police defendants engaged in unlawful conduct that injured the Plaintiffs.

70.    The police defendants named in this Complaint conspired and agreed to falsely charge the Plaintiffs with crimes the police defendants knew the Plaintiffs did not commit.

71.    In furtherance of this conspiracy, the defendants filled out, filed, participated in the drafting, in certain cases destroyed, and/or had direct knowledge of the false police reports related to the arrests of the six Plaintiffs.

72.    The conspiracy was carried out pursuant to the widespread practice in the Chicago Police Department commonly known as the "Code of Silence" or "Chicago Code," detailed more thoroughly below.

73.    The night of September 23, 2008, Defendants Shine, O'Donnell and/or others named and

11

unnamed herein conspired and agreed to conceal and/or destroy material evidence that impeaches the Defendants' version of events, including but not limited to records that would identify the officer(s) responsible for the employment of excessive force against Alberto Martinez.

74.     In furtherance of the conspiracy described herein, the City of Chicago and several police officers named and unnamed failed to appear in court when subpoenaed and failed to produce evidence ordered produced through subpoena.

### Destruction and Concealment of Material Evidence

75.     On or about October 10, 2008, defense counsel issued subpoenas for several documents material to the preparation of the defense, including but not limited to the on-board taser data for the taser used against Alberto Martinez.

76.     The same day, the Chicago Police Department's subpoena compliance unit issued a request for the subpoenaed report.

77.     In December of 2008, defense counsel requested assistance from the prosecuting authorities to obtain the on-board taser data, including a motion in the Circuit Court of Cook County for supplementary discovery.

78.     In January of 2008, the Chicago Police Department's subpoena compliance officer, Patricia Martin, claimed compliance with the defense subpoena was made impossible by the officers' failure to submit the requested report.

79.     The defense moved for a rule to show cause, which the judge denied for failure to prove service, and also moved to compel discovery or in the alternative for sanctions.

80.     The judge provided Defendants Purtell and O'Donnell one day to appear with all of the

subpoenaed documents.

81.     After two failed attempts by Defendant O'Donnell to submit a record that showed a taser

discharge on the date of the Plaintiffs' arrest, the judge ordered an evidentiary hearing on

February 20, 2009.

82.     To prepare for that February evidentiary hearing, on the basis of documents previously

subpoenaed, the defense further subpoenaed three witnesses and several documents to prove that

the Defendants had committed a deception upon the Court.

83.     The Chicago Police Department willfully and intentionally refused to comply with every

subpoena issued in February.

84.     By the Court's suggestion, the defense made an oral motion for a rule to show cause,

which was granted.  Patricia Martin was ordered to be show cause why she should not be held in

indirect civil contempt.

85.     Subsequent to issuance of the rule to show cause and service upon the City of Chicago,

the City of Chicago *destroyed* records subject to the rule to show cause.

86.     Upon information and belief, the City of Chicago destroyed said records in order to

conceal the civil rights violations committed against the Plaintiffs.

87.     Yvonne Lagronne, whose client was ordered to show cause why she should not be held in

contempt, permitted the destruction of her client's records.

88.     Upon information and belief, the police defendants knew that the destroyed records

would prove constitutional violations.

**Trial**

89.     Prior to trial, the prosecution made material and substantial changes to the charges against the Plaintiffs.  Upon information and belief, said changes were occasioned by interviews between the prosecutors and Defendants Bogdalek, Anderson, and Purtell, during which the defendants made substantial and incredible changes to their sworn testimony.

90.     According to Judge Donnelly, he did not find the Plaintiffs guilty of any crime because defendants Bogdalek, Anderson, and Purtell failed to testify credibly.

91.     For example, although Defendants Anderson and Bogdalek could not remember whether any officers searched the house and did not tell any officers about evidence inside the house, Defendant Purtell remembers several officers inside the house.

92.     In the hallway of the courthouse, one police officer questioned why they were ever subpoenaed because lawyers should learn they will just falsely testify that they do not remember in order to avoid stepping on each other's stories, or words to that effect.

93.     Judge Donnelly, who admits he did not count every instance, claimed Defendant Anderson's answer to questions at trial was, "I don't remember," or words to that effect, on at least 30 occasions.  In fact, the real number is significantly greater.

94.     By way of illustrating the long line of false answers given by Defendant Anderson in this regard, at the time of trial, Defendant Anderson could not remember, "if [he had] been trained on how to collect evidence."

**Judge Donnelly's Ruling**

95.     The following excerpts were from Judge Donnelly's ruling:

14

i.    "With respect to the evidence in this case, the Court was greatly troubled by the testimony of Officer Anderson."

ii.   "Statements under oath are significant. Testimony is under oath. If the officer isn't going to take seriously what he says under oath regarding an occurrence . . . the Court can't take seriously his testimony here and the Court finds that that is extremely significant for this whole case."

iii.  "Once we lose our belief that there was indeed a valid arrest for drinking on the public way and the Court was not able to believe Officer Anderson and Officer Bogdalek's testimony with respect to that matter, we lose our way."

iv.   "So the fact of that major corroboration of that event is something on which the officers were impeached three times with contemporaneous reports undermines completely the ability of the State and City to prove beyond a reasonable doubt these charges."

v.    ". . . this is a case in which there were eight single impeachments on things that were essential to the case, rendering the State's case not sufficient to survive a motion for a directed finding."

vi.   "Moreover, as the Court counted 30 times which Officer Anderson could not recall significant facts regarding these incidents, the Court does find that this lack of recollection, inconsistency as to extremely important things like how many witnesses there were present for a battery or whether the purpose of approach was for a field interview or to arrest somebody for drinking on the public way, as to whether the Defendant made a statement or whether he didn't, whether he went in the house or

15

whether he didn't, these things - - or whether there were officers that went in the house and whether officers didn't or whether there was a supervisor present or whether there was not, whether the supervisor, Sergeant Shine, ordered the Defendant Meliton Martinez inside of the house or whether it was Officer Purtell."

### Count I

### 42 U.S.C. Section 1983 — Excessive Force

1-98.    Plaintiffs reallege paragraphs 1 through 98 above, as if fully set forth here.

99.    Plaintiffs allege that the Defendants committed excessive force as follows:

    a.    By Alberto Martinez against Defendants Anderson, Bogdalek, Daniel Lopez, Bard, and in addition thereto Shine or in the alternative O'Donnell;

    b.    By Meliton Martinez against Defendants Shine and Purtell;

    c.    By Sofia Martinez against Defendants Bogdalek and Purtell;

    d.    By Felipe Garcia against Defendant Shine;

    e.    By Martin Martinez against Defendants O'Donnell Bard, Perez, and/or Kelly;

    f.    By Daniel Martinez against Defendants Purtell, Newman, Perez, Bogdalek, Kelly, Lofgren, Anderson, and/or Bard.

100.    The actions of the aforementioned defendant officers, detailed above, constitute unreasonable, unjustifiable, and excessive force against plaintiffs, thus violating plaintiffs' rights under the Fourth Amendment to the United States Constitution, and 42 U.S.C., Section 1983.

101.    As a proximate result of the above-detailed actions of defendants, plaintiffs were injured, including severe physical injuries, pain, mental suffering, anguish, humiliation, mental suffering,

psychological injuries, and medical expenses.

WHEREFORE, pursuant to 42 U.S.C. Section 1983, Plaintiffs demand judgment against the police defendants Anderson, Bogdalek, Daniel Lopez, Bard, Shine, O'Donnell, Purtell, Perez, Kelly, Lofgren and Newman, jointly and severally, for compensatory damages against these defendant officers, and because these defendants acted maliciously, wantonly, or oppressively, punitive damages, plus the costs of this action and attorney's fees, and such other and additional relief as this court deems equitable and just.

## Count II

### Section 1983 Fourth Amendment Violations —Illegal Search and Seizures

1-98.   Plaintiffs reallege paragraphs 1 through 98 above, as if fully set forth here.

99.     Plaintiffs allege that the Defendants committed illegal searches and seizures as follows:

      a.   By Alberto Martinez against Defendants Anderson, Bogdalek, Daniel Lopez, Bard, and in addition thereto Shine or in the alternative O'Donnell;

      b.   By Meliton Martinez against Defendants Shine, Purtell, Newman, and Lofgren;

      c.   By Sofia Martinez against Defendants Shine, Bogdalek, Anderson and Purtell;

      d.   By Felipe Garcia against Defendants Shine, Newman, Perez, Bogdalek, Kelly, Purtell, Lofgren, Anderson, and Bard;

      e.   By Martin Martinez against Defendants O'Donnell, Bard, Perez, and/or Kelly;

      f.   By Daniel Martinez against Defendants Purtell, Newman, Perez, Bogdalek, Kelly, Lofgren, Anderson, and/or Bard.

100.    The searches and seizures of the plaintiffs' persons and property performed willfully

and wantonly by the aforementioned defendants, as detailed above, individually and in conspiracy with each other, were in violation of plaintiffs' right to be free of unreasonable searches and seizures under the Fourth Amendment to the Constitution of the United States and U.S.C. § 1983.

101.     As a proximate result of the above-detailed actions of the aforementioned defendants, plaintiffs were injured, including the deprivation of their liberty and the taking of their property. In addition, the violations proximately caused the plaintiffs great mental anguish and humiliation, exposed them to public scandal and disgrace, and caused them to incur various expenses, all to their damage.

WHEREFORE, pursuant to 42 U.S.C. Section 1983, Plaintiffs demand judgment against Defendants Anderson, Bogdalek, Daniel Lopez, Bard, Shine, O'Donnell, Purtell, Perez, Kelly, Lofgren and Newman, jointly and severally, for compensatory damages against these defendant officers, and because these defendants acted maliciously, wantonly, or oppressively, punitive damages, plus the costs of this action and attorney's fees, and such other and additional relief as this court deems equitable and just.


### Count III

### 42 U.S.C. Section 1983 – Fourteenth and Eighth Amendment Claim

1-98.   Plaintiffs reallege paragraphs 1 through 98 above, as if fully set forth here.

99.     The actions of the police defendants, described above, whereby defendants were aware of but deliberately, willfully, and wantonly inflicted physical and psychological torture

onto the plaintiffs, through the use of physical force, government power, and other means, constituted deliberate indifference to plaintiffs' rights under the U.S. Constitution, thus violating the Fourteenth and Eighth Amendments to the United States Constitution.

100.    As a direct and proximate result of these Constitutional violations, plaintiffs were caused to suffer great pain, anguish, despair, psychological injury, and physical injury.

WHEREFORE, pursuant to 42 U.S.C. Section 1983, Plaintiffs demand judgment against the police defendants, jointly and severally, for compensatory damages against defendant officers and because these defendants acted maliciously, wantonly, or oppressively, punitive damages, plus the costs of this action and attorney's fees, and such other and additional relief as this court deems equitable and just.

## Count IV

### 42 U.S.C. Section 1983 – Conspiracy to Deprive Constitutional Rights

1-98.   Plaintiffs reallege paragraphs 1 through 98 above, as if fully set forth here.

99.    As described more fully above, each of the police defendants reached an agreement amongst themselves to frame each of the Plaintiffs for the crimes alleged, and to thereby deprive Plaintiffs of their Constitutional rights, all as described more fully throughout this Complaint.

100.    Independently, before and after Plaintiffs' charges and trials, each of the Defendants further conspired and continue to conspire to deprive Plaintiffs of exculpatory evidence to which they were lawfully entitled and which would have led to a more timely exoneration of the false charges, as described more fully throughout this Complaint.

101.    In this manner, the Defendant Officers, acting in concert with each other and other

19

employees of the City of Chicago, have conspired by concerted action to accomplish an unlawful

purpose by an unlawful means.

102.    In furtherance of the conspiracy, each of the co-conspirators committed overt acts and

was an otherwise willful participant in joint activity.

103.    As a direct and proximate result of the illicit prior agreement referenced above, Plaintiffs'

rights were violated, and they suffered damages, severe emotional distress and anguish,

and a deprivation of their liberty, as is more fully alleged above.

104.    The misconduct described in this Count was undertaken with malice, willfullness, and

reckless indifference to the rights of plaintiffs and others.

105.    The misconduct described in this Count was undertaken pursuant to the policy and

practice of the Chicago Police Department in the manner described more fully throughout this

Complaint and was tacitly ratified by policy-makers for the City of Chicago with final

policymaking authority.

WHEREFORE, pursuant to 42 U.S.C. Section 1983, Plaintiffs demand judgment against each of

the police defendants, jointly and severally, for compensatory damages against defendant officers

and because these defendants acted maliciously, wantonly, or oppressively, punitive damages,

plus the costs of this action and attorney's fees, and such other and additional relief as this court

deems equitable and just.

## Count V

## 42 U.S.C. Section 1983 – Failure to Intervene

1-98.   Plaintiffs reallege paragraphs 1 through 98 above, as if fully set forth here.

99.     In the manner described throughout this Complaint, during the constitutional violations described herein, each of the Defendants stood by without intervening to prevent the misconduct committed against the Plaintiffs.

100.    As a result of the Defendant Officers' failure to intervene to prevent the violations of Plaintiff's constitutional rights, Plaintiffs suffered pain and injury, as well as emotional distress, and a deprivation of their liberty, as is more fully described throughout this Complaint.

101.    The misconduct described in this Count was undertaken with malice, willfullness, and reckless indifference to the rights of plaintiffs and others.

WHEREFORE, pursuant to 42 U.S.C. Section 1983, Plaintiffs demand judgment against each of the police defendants, jointly and severally, for compensatory damages against defendant officers and because these defendants acted maliciously, wantonly, or oppressively, punitive damages, plus the costs of this action and attorney's fees, and such other and additional relief as this court deems equitable and just.

**Count VI**

**42 U.S.C. Section 1983 – False Imprisonment**

1-98.   Plaintiffs reallege paragraphs 1 through 98 above, as if fully set forth here.

99.     Plaintiffs allege that the Defendants committed false imprisonment as follows:

    a.  By Alberto Martinez against Defendants Anderson, Bogdalek, Bard, Perez and
        O'Donnell;

    b.  By Meliton Martinez against Defendants Shine, Purtell, Newman, and Lofgren;

    c.  By Sofia Martinez against Defendants Bogdalek and Anderson;

21

     d.   By Felipe Garcia against Defendants Shine, Newman, Perez, Bogdalek, Kelly, Purtell, Lofgren, Anderson, and Bard;

     e.   By Martin Martinez against Defendants Bard, Perez, and Kelly;

     f.   By Daniel Martinez against Defendants Purtell, Newman, Perez, Bogdalek, Kelly, Lofgren, Anderson, and Bard.

100.    The actions of the aforementioned police defendants, described above, whereby defendants knowingly arrested and imprisoned plaintiffs without probably cause or any other justification, constituted deliberate indifference to plaintiffs' rights under the U.S. Constitution, thus violating the Fourteenth and Eighth Amendments to the United States Constitution.

101.    As a direct and proximate result of these Constitutional violations, plaintiffs were caused to suffer great pain, anguish, despair, deprivations of their liberty and dignity, psychological injury and physical injury.

WHEREFORE, pursuant to 42 U.S.C. Section 1983, Plaintiffs demand judgment against the Defendants Anderson, Bogdalek, Purtell, Newmen, Perez, Kelly, Lofgren, Bard, O'Donnell, Shine, jointly and severally, for compensatory damages against defendant officers and because these defendants acted maliciously, wantonly, or oppressively, punitive damages, plus the costs of this action and attorney's fees, and such other and additional relief as this court deems equitable and just.

## Count VII

## 42 U.S.C. Section 1983 – Due Process

1-98.   Plaintiffs reallege paragraphs 1 through 98 above, as if fully set forth here.

22

99.     As described more fully above, all of the police defendants, while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiffs of their constitutional right to a fair trial.

100.    In the manner described more fully above, the defendants deliberately withheld exculpatory evidence, as well as fabricated false reports, testimony, and other evidence, thereby misleading and misdirecting the criminal prosecution of Plaintiffs.  In addition, the defendants destroyed material exculpatory evidence. Absent this misconduct, the prosecution of Plaintiffs could not and would not have been pursued.

101.    The defendant officers' misconduct also directly resulted in the unjust criminal trials of Plaintiffs, thereby denying them their constitutional right to a fair trial, and a fair appeal thereof, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

102.    As a result of this violation of his constitutional rights, Plaintiffs suffered injuries, including, but not limited to, emotional distress, deprivation of rights secured by the U.S. Constitution, and a deprivation of their liberty, as is more fully alleged above.

103.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiffs' constitutional rights.

WHEREFORE, pursuant to 42 U.S.C. Section 1983, Plaintiffs demand judgment against the police defendants, jointly and severally, for compensatory damages against defendant officers and because these defendants acted maliciously, wantonly, or oppressively, punitive damages, plus the costs of this action and attorney's fees, and such other and additional relief as this court

deems equitable and just.

## Count VIII

### 42 U.S.C. Section 1983 - Monell Claim Against City of Chicago

1-98.    Plaintiffs reallege paragraphs 1 through 98 above, as if fully set forth here.

99.    The constitutional violations detailed above were caused in part by the customs, policies, and practices of the defendants, as promulgated, enforced, and disseminated by the City of Chicago, the Mayor of Chicago, the City Council, members of the City Council, the aldermen, the Chicago Police Department, the Chicago Police Board, members of the Chicago Police Board, the Office of Professional Standards (aka "IPRA), and the Superintendent, whereby those charged with ensuring compliance with the Constitution of the United States, in this case and many other cases, instead deliberately, willfully, and wantonly encouraged the infliction of physical and psychological injuries onto the citizens of the City of Chicago.

100.    The customs, policies, and practices that caused the constitutional violations herein alleged include:

 (a) a code of silence whereby officers refuse to report the unconstitutional and criminal misconduct of other officers, including the unconstitutional and criminal conduct alleged in this Complaint; whereby officers remain silent or give false and misleading information during official investigations to cover up unconstitutional and criminal misconduct, to protect themselves, and to protect other officers; and whereby officers maintain loyalty to each other over the constitutional rights of citizens;

(b) the willful, wanton, and deliberately indifferent failure to train, supervise, and discipline

police officers in regards to unconstitutional and criminal misconduct;

 (d) the failure to adequately investigate and substantiate allegations of unconstitutional and criminal misconduct by police officers;

(e)     the failure to adequately discipline police officers that engage in unconstitutional and criminal misconduct; and

(f)     the falsification of testimony, evidence, and preconceived dishonest conduct;

101.     The policies, practices, and customs herein complained of are so prevalent and widespread within the Chicago Police Department as to put City of Chicago policy makers on actual and implied notice that such policies existed in full force and effect.

102.     City of Chicago policy makers acted willfully, wantonly, and deliberately indifferent towards the constitutional rights of plaintiffs by accepting, monitoring, maintaining, protecting, and encouraging the unconstitutional policies, practices, and customs listed in paragraph 100 of this Complaint.

103.     By acting willfully, wantonly, and deliberately indifferent towards the constitutional rights of plaintiffs, City of Chicago policy makers approved, encouraged, and caused the constitutional violations alleged in this Complaint.

104.     As a proximate result of the above-detailed actions of the defendants and City of Chicago policy makers, plaintiffs were injured, including injuries resultant from the above detailed constitutional violations, pain, suffering, anguish, embarrassment, emotional injuries, psychological injuries, physical injuries, and permanent injuries. In addition, the violations proximately caused the plaintiffs great humiliation, exposed them to public scandal and disgrace,

and caused them to incur various expenses, all to their damage.

WHERFORE, plaintiffs demand judgment against the City of Chicago for compensatory damages, plus attorney's fees pursuant to statute and the costs of this action, and such other and further relief as this Court deems just, proper, and equitable.

## Count IX

### 745 ILCS 10/9-102

1-98.    Plaintiffs reallege paragraphs 1 through 98 above, as if fully set forth here.

99.    Defendant City of Chicago is the employer of Defendants CHICAGO POLICE OFFICERS DOUGLAS ANDERSON, Star # 6325, ALLYSON BOGDALEK, Star # 18598, JOSEPH SHINE, Star # 2293, CHRISTOPHER LOFGREN, Star # 3600, DANIEL O'DONNELL, Star # 1927, BRIAN PURTELL, Star # 3217, JILL NEWMAN, Star # 16481, RUTH PEREZ, Star # 17745, DANIEL LOPEZ, Star # 18707, PATRICK KELLY, Star # 19397, and CHRIS BARD, Star # 6772.

100.    Defendants committed the acts alleged above under color of law and in the scope of their employment as employees of the City of Chicago.

WHEREFORE, should the police defendants be found liable on one or more of the claims set forth above, Plaintiffs demand that, pursuant to 745 ILCS 10/9-102, the Defendant City of Chicago be found liable for any judgment plaintiffs obtain against said defendants, as well as attorneys fees and costs awarded.

**Count X**

**Battery — State Claim Against City and Officers**

1-98.    Plaintiffs reallege paragraphs 1 through 98 above, as if fully set forth here.

99.    By the actions detailed above, and by participating in the above-described conspiracy, the police defendants intentionally made offensive bodily contact against Plaintiffs and inflicted bodily harm to Plaintiffs, as follows:

a.    Against Alberto Martinez by Defendants Anderson, Bogdalek, Daniel Lopez, Bard, and in addition thereto Shine or in the alternative O'Donnell;

b.    Against Meliton Martinez by Defendants Shine and Purtell;

c.    Against Sofia Martinez by Defendants Bogdalek and Purtell;

d.    Against Felipe Garcia by Defendant Shine;

e.    Against Martin Martinez by Defendants O'Donnell Bard, Perez, and/or Kelly;

f.    Against Daniel Martinez by Defendants Purtell, Newman, Perez, Bogdalek, Kelly, Lofgren, Anderson, and/or Bard.

100.    By the actions detailed above, and by participating in the above-described conspiracy, the police defendants performed the acts detailed above with the intent of inflicting physical harm to Plaintiffs. Plaintiffs were physically harmed.

101.    As a direct and proximate result of the battery, Plaintiffs were injured.

102.    The City is sued in this Count pursuant to the doctrine of respondeat superior, as the defendant officers performed the actions complained of while on duty and in the employ of defendant City, and while acting within the scope of employment.

WHEREFORE, plaintiffs demand judgment against the City and the individual police defendants Anderson, Bogdalek, Daniel Lopez, Bard, Shine, O'Donnell, Purtell, Perez, Kelly, Lofgren and Newman, jointly and severally, for compensatory damages and punitive damages, and further demand attorney's fees and the costs of this action, and for such other relief as this Court deems just, proper, and equitable.

## Count XI

### False Arrest — State Claim Against City and Officers

1-98.   Plaintiffs reallege paragraphs 1 through 98 above, as if fully set forth here.

99.   By the actions detailed above, and by participating in the above-described conspiracy, the police defendants knowingly sought to and did in fact arrest Plaintiffs on false charges for which they knew there was no probable cause, as follows:

a.   By Alberto Martinez against Defendants Anderson, Bogdalek, Bard, Perez and O'Donnell;

b.   By Meliton Martinez against Defendants Shine, Purtell, Newman, and Lofgren;

c.   By Sofia Martinez against Defendants Bogdalek and Anderson;

d.   By Felipe Garcia against Defendants Shine, Newman, Perez, Bogdalek, Kelly, Purtell, Lofgren, Anderson, and Bard;

e.   By Martin Martinez against Defendants Bard, Perez, and Kelly;

f.   By Daniel Martinez against Defendants Purtell, Newman, Perez, Bogdalek, Kelly, Lofgren, Anderson, and Bard.

100.   The City is sued in this Count pursuant to the doctrine of respondeat superior, in that

defendant officers performed the actions complained of while on duty and in the employ of defendant City, and while acting within the scope of their employment.

101.    As a direct and proximate result of the false arrests, Plaintiffs were damaged, including the value of their lost liberty, exposure to public scandal and disgrace, damage to their reputation, mental and emotional suffering, humiliation, pain, and anguish.

WHEREFORE, plaintiffs demand judgment against the City and the police defendants Defendants Anderson, Bogdalek, Purtell, Newmen, Perez, Kelly, Lofgren, Bard, O'Donnell, and Shine, jointly and severally, for compensatory damages and punitive damages, and further demand attorney's fees and the costs of this action, and for such other relief as this Court deems just, proper, and equitable.

## Count XII

### Intentional Infliction of Emotional Distress Against City and Officers

1-98.    Plaintiffs reallege paragraphs 1 through 98 above, as if fully set forth here.

99.    The above-detailed conduct by the defendants was extreme and outrageous, exceeding all bounds of human decency.

100.    Defendants performed the acts detailed above with the intent of inflicting severe emotional distress on the plaintiffs or with knowledge of the high probability that the conduct would cause such distress.

101.    As a direct and proximate result of this conduct, plaintiffs did in fact suffer severe emotional distress, resulting in injury to their minds, bodies, and nervous systems, including loss of sleep, mental anguish, nightmares, anxiety attacks, fear, and flashbacks.

102.     The City is sued in this Count pursuant to the doctrine of respondeat superior, in that

defendant officers performed the actions complained of while on duty and in the employ of

defendant City, and while acting within the scope of this employment.

WHEREFORE, plaintiffs demand judgment against the City and the police defendants,

jointly and severally, for compensatory damages and punitive damages, and further demand

attorney's fees and the costs of this action, and for such other relief as this Court deems just,

proper, and equitable.

### Count XIII

### Malicious Prosecution — State Claim Against City and Officers

1-98.    Plaintiffs reallege paragraphs 1 through 98 above, as if fully set forth here.

99.      By the actions detailed above, and by participating in the above-described conspiracy, the

police defendants Anderson, Bogdalek, Purtell, Shine, Newman, Perez, Kelly, Lofgren, and Bard

knowingly sought to and did in fact maliciously prosecute plaintiffs on false charges for which

they knew there was no probable cause.

100.     The City is sued in this Count pursuant to the doctrine of respondeat superior, in that

defendant officers performed the actions complained of while on duty and in the employ of

defendant City, and while acting within the scope of this employment.

101.     As a direct and proximate result of the malicious prosecution, plaintiffs were damaged,

including the value of their lost liberty, lost work, exposure to public scandal and disgrace,

damage to their reputation, mental and emotional suffering, humiliation and anguish.

WHEREFORE, plaintiffs demand judgment against the City and the police defendants Anderson,

Bogdalek, Purtell, Shine, Newman, Perez, Kelly, Lofgren, and Bard, jointly and severally, for compensatory damages and punitive damages, and further demand attorney's fees and the costs of this action, and for such other relief as this Court deems just, proper, and equitable.

## Count XIV

### Assault — State Claim Against City and Defendant Bard

1-98.   Plaintiffs reallege paragraphs 1 through 98 above, as if fully set forth here.

99.   By the actions detailed above, and by participating in the above-described conspiracy, Defendant Bard caused Plaintiff Sofia Martinez to reasonably apprehend imminent offensive contact and bodily injury.

100.   By the actions detailed above, and by participating in the above-described conspiracy, Defendant Bard performed the acts detailed above with the intent of causing Sofia Martinez to apprehend imminent offensive contact and bodily injury. Sofia Martinez reasonably apprehended offensive contact and imminent bodily harm.

101.   As a direct and proximate result of the assault, Sofia Martinez was injured.

102.   The City is sued in this Count pursuant to the doctrine of respondeat superior, as Defendant Bard performed the actions complained of while on duty and in the employ of defendant City, and while acting within the scope of employment.

WHEREFORE, plaintiff Sofia Martinez demands judgment against the City and Defendant Bard, jointly and severally, for compensatory damages and punitive damages, and further demand attorney's fees and the costs of this action, and for such other relief as this Court deems just, proper, and equitable.

**Count XV**

**42 U.S.C. Section 1983 – Due Process—Destruction of Evidence**

**Illinois Constitution – Article 1 Section 2 – Due Process – Destruction of Evidence**

1-98.    Plaintiffs reallege paragraphs 1 through 98 above, as if fully set forth here.

99.    As described more fully above, Defendant LaGronne, while acting individually, jointly, and in conspiracy with others, as well as under color of law and within the scope of her employment, deprived Plaintiffs of their constitutional right to a fair trial.

100.    In the manner described more fully above, the defendant deliberately caused or knowingly allowed certain evidence to be destroyed during the course of Plaintiffs' criminal prosecution.

101.    Absent this misconduct, the prosecution of Plaintiffs could not and would not have been pursued.

102.    The defendant's misconduct also directly resulted in the unjust criminal trials of Plaintiffs, thereby denying them their constitutional right to a fair trial, and a fair appeal thereof, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

103.    As a result of this violation of his constitutional rights, Plaintiffs suffered injuries, including, but not limited to emotional distress, a deprivation of rights secured by the U.S. Constitution, and a deprivation of their liberty, as is more fully alleged above.

104.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiffs' constitutional rights.

WHEREFORE, pursuant to 42 U.S.C. Section 1983, Plaintiffs demand judgment against

32

Defendant LaGronne for compensatory damages and because Defendant LaGronne acted

maliciously, wantonly, or oppressively, punitive damages, plus the costs of this action and

attorney's fees, and such other and additional relief as this court deems equitable and just.

**PLAINTIFFS DEMAND TRIAL BY JURY.**

Respectfully submitted,

ALBERTO MARTINEZ, MELITON MARTINEZ, DANIEL

MARTINEZ, SOFIA MARTINEZ, MARTIN MARTINEZ,

AND FELIPE GARCIA,

By: One of their attorneys

_____/s Jared S. Kosoglad_____

Jared S. Kosoglad
Jared S. Kosoglad, P.C.
451 W. Huron, #1410
Chicago, IL 60654
312-513-6000
jared@jaredlaw.com