**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| ALBERTO MARTINEZ, MELITON MARTINEZ, DANIEL MARTINEZ, SOFIA MARTINEZ, MARTIN MARTINEZ, and FELIPE GARCIA, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 09 C 5938 |
| CITY OF CHICAGO, <u>et al.</u>, | ) ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION</u>**

Before the court is the plaintiffs' motion for sanctions. For the following reasons, the court grants the motion in part, and denies it in part.

**<u>BACKGROUND</u>**

The plaintiffs sued the defendants — the City of Chicago, certain individual police officers, and an Assistant Corporation Counsel — for damages stemming from the plaintiffs' arrests on September 23, 2008. Among other claims, the plaintiffs asserted state-law claims against the defendants for malicious prosecution. They served subpoenas on the Cook County State's Attorneys' Office ("CCSAO") during discovery for documents related to their criminal prosecutions. The plaintiffs have moved to sanction the CCSAO and

its attorneys for unreasonably prolonging the discovery over a period of several months.[1]

## I.   Plaintiffs' Discovery Requests

### A.   Plaintiffs' April 18, 2012 Subpoena

The September 23, 2008 arrests were based on charges that plaintiffs Alberto Martinez, Sophia Martinez, Meliton Martinez, and Felipe Garcia had committed various misdemeanor offenses, including resisting arrest.  (See Second Am. Compl. ¶¶ 18, 26, 36, 44.)  It appears that a Cook County Circuit Court Judge dismissed the charges against Felipe Garcia prior to trial.  (See id. at ¶ 45; Letter from J. Bruce to J. Kosoglad, dated June 5, 2012, attached as Ex. 2 to Pls.' Mot., at 1 (stating that the case against one of the plaintiffs "was stricken off the call with leave to reinstate on May 29, 2009").)  After a bench trial, Cook County Circuit Court Judge Thomas Donnelly found the remaining defendants not guilty on or about June 1, 2009.  (See Pl.' Mem. at 2.)  Three months later, attorney Jared Kosoglad — who had represented the plaintiffs in their criminal cases — filed this civil lawsuit on their behalf. On April 18, 2012, Mr. Kosoglad served a subpoena on the CCSAO to obtain records related to the plaintiffs' prosecutions:

---

[1]   Some of the relief that the plaintiffs seek in their sanctions motion is directed to the City of Chicago.  (See Pls.' Mot. for Sanctions Against Third Party Discovery Resp. the Cook County State's Attorney & Its Counsel ("Pls.' Mot."), Dkt. 165, at 24-25, ¶¶ 1-2.)  The plaintiffs have settled their damages claims against the defendants and voluntarily dismissed those claims with prejudice.  They have clarified that, in light of the settlement, they no longer seek sanctions against the City of Chicago.

> Identify and produce any and all documents related to the criminal cases involving the Martinez family including documents, e-mails, memos, notebooks, notes, pleadings, drafts and correspondence from the following cases: 08-275998, 08-276351, 08-276019, 08-276000.

(Subpoena dated Apr. 18, 2012, attached as Ex. 1 to Pls.' Mot., at 1.)   The CCSAO responded that it was unable to locate any responsive documents:

> I have reviewed the court docket which indicates that the criminal case under case number 08MC102760000 was stricken off the call with leave to reinstate on May 29, 2009 and that the criminal cases under case numbers 08MC1276019, 08MC1276351, and 08MC1275998 were bench trials and the finding was not guilty.   However, a thorough search was conducted to determine whether these files had been retained and at this time the files cannot be located.   Therefore, there are no documents in the State's Attorney's possession responsive to this subpoena.

(Letter from J. Bruce to J. Kosoglad, dated June 5, 2012, at 1.)

### B.   Plaintiffs' January 28, 2013 Subpoena

In January 2012, Chicago Police Officers — including defendants Jeffrey Weber and Allyson Bogdalek — arrested and charged plaintiff Daniel Martinez with resisting arrest.   (See Pls.' Mot. at 2.)   Mr. Kosoglad represented Martinez during his 2012 prosecution and contends that the defendants arrested him in retaliation for his claims against them in this lawsuit.   (Id. at 3.)   On January 28, 2013, a state-court judge found Martinez not guilty after a bench trial in Branch 34 of the Circuit Court of Cook County.   (Id. at 3.)   Judges at Branch 34 preside over non-jury misdemeanor cases.   (See Third Party Respondent's Resp. to

Pls.' Mot. for Sanctions ("CCSAO's Resp."), Dkt. 167, at 3.)[2]
Misdemeanor cases in which the defendant has demanded a jury are
tried at Branch 46. (Id. at 4.) As a matter of policy and/or
practice, the CCSAO does not create a "typical attorney's file" for
misdemeanor bench trials. (Id.) Instead, Assistant State's
Attorneys ("ASAs") fasten together "the necessary documents" —
usually documents created by other agencies (e.g., arrest reports)
— for use during the trial. (Id.) They place those documents into
a "Dispo bin" immediately after the judge issues a final decision.
(Id.) Chicago Court Sergeants retrieve the materials from the bin
at the end of each court day for shredding. (Id.) After the judge
acquitted Martinez, Mr. Kosoglad "immediately" returned to his
office and e-mailed a subpoena to ASA Patricia Fallon seeking
Martinez's criminal file. (Id.)[3] ASA Fallon responded by
telephone the following day and told Kosoglad that "the file was
destroyed immediately upon conclusion of the case," citing the
document-destruction practice that the court has just described.
(Id. at 3-4.)

The plaintiffs filed an emergency motion in this court to
preserve the criminal file or, in the alternative, for a rule to

---

[2] The court draws some of the following information from evidence that
the parties have submitted; other information is only attorney argument. The
parties effectively agree, however, that these facts are accurate.

[3] ASA Fallon, and ASA Mary E. McClellan, have been primarily responsible
for handling the CCSAO's responses to the plaintiffs' discovery requests. (See
CCSAO's Resp. at 2.) They are both civil attorneys in the CCSAO's Civil Actions
Bureau. (Id.) They did not participate in the plaintiffs' criminal
prosecutions.

show cause why the court should not hold the CCSAO in contempt for destroying the file. At the January 30, 2013 hearing on the motion, Mr. Kosoglad cited two documents that he argued undercut the CCSAO's representations about the file: (1) an "Application for Authority to Dispose of Local Records," dated October 12, 1999; and (2) a "Records Disposal Certificate," dated January 17, 2013. (See Trans. of Hearing, dated Jan. 30, 2013, attached as Ex. 10 to CCSAO's Resp., at 3-4, 9-11); Application for Authority to Dispose of Local Records No. 99:25C, dated Oct. 12, 1999, attached as Ex. 32 to Pls.' Mot.; Records Disposal Certificate, dated Jan. 17, 2013, attached as part of Group Ex. 9 to Pls.' Mot.) Pursuant to the Illinois's Local Records Act, the CCSAO must obtain the Local Records Commission of Cook County's approval before destroying any public record. See Local Records Act, 50 ILCS 205/7; Ill. Admin. Code tit. 44, § 4500.30 (requiring agencies to submit applications to the Local Records Commission to approve records-retention periods); id. at § 4500.40 (requiring agencies to submit a "Records Disposal Certificate" 60 days before destroying documents pursuant to its previously approved schedule). The CCSAO submitted a proposed records-retention schedule to the Commission for approval in 1999. (See Application for Authority to Dispose of Local Records No. 99:25C, dated Oct. 12, 1999, at 1.) The Commission approved the application, which authorizes the CCSAO to destroy "misdemeanor files" one month after the final court hearing. (Id.

at 8.)  On January 17, 2013, the CCSAO notified the Local Records Commission in a "Records Disposal Certificate" that it intended to destroy a large number of documents on or after March 8, 2013. (<u>See</u> Records Disposal Certificate, dated Jan. 17, 2013, at 1.)  The Certificate listed 42 categories of documents, and the date-range and volume (measured in cubic feet) for each category. (<u>Id.</u>)  The list included misdemeanor case files — five cubic feet, total — from 2000 to 2010. (<u>Id.</u> at 2.)

The plaintiffs argued that these documents demonstrated that Martinez's case file still existed, (<u>see</u> Trans. of Hearing, dated Jan. 30, 2013, at 3, 9), or else that the CCSAO's practice of "immediately" destroying misdemeanor case files violated the terms of its approved records-retention schedule. (<u>See</u> <u>id.</u> at 9.)  They also argued that the files for the prosecutions that terminated in 2009 must be among the misdemeanor files that the CCSAO intended to destroy. (<u>See</u> <u>id.</u> at 4.)  First, we concluded that ASA Fallon had accurately described the CCSAO's document-destruction practice, and that Daniel Martinez's 2013 misdemeanor file had been destroyed pursuant that practice. (<u>See</u> <u>id.</u> at 10; <u>see also</u> <u>id.</u> at 12 ("Now I want to make it very clear that I am not finding any fault with the State's Attorney's Office here because no fault has been shown.").)  Second, we held that it was beyond the scope of this case whether the CCSAO's practice complied with the records-retention schedule that the Local Records Commission had approved.

(<u>Id.</u>)  We did, however, order the CCSAO to preserve the relevant misdemeanor files from 2009 and 2013 to the extent that they still existed.  (See <u>id.</u> at 11; Minute Entry, dated Jan. 30, 2013, Dkt. 117.)

## C.  Plaintiffs' February 11, 2013 Subpoenas

On February 6, 2013, ASA Fallon told Mr. Kosoglad again that the CCSAO did not have any files responsive to the plaintiffs' January 28, 2013 subpoena.  (Letter from P. Fallon to J. Kosoglad, dated Feb. 6, 2013, attached as Ex. 8 to Pls.' Mot. ("As I stated, the State's Attorney's Office does not routinely maintain files related to misdemeanor offenses.").)  The plaintiffs were dissatisfied with the CCSAO's response and, on February 11, 2013, served new subpoenas seeking: (1) to depose the three ASAs involved in Daniel Martinez's 2012 prosecution; (2) to depose a CCSAO representative about the office's records-retention policies; and (3) to inspect the misdemeanor files identified in the Records Disposal Certificate.  ASA McClellan responded with a letter objecting to the proposed discovery.  (See Letter from M. McClellan to J. Kosoglad, attached as Ex. 10 to Defs.' Stmt., at 1-2.)  The letter attached an affidavit from Robert Ryan, the CCSAO's "Purchasing/Operations Director," who purported to "have personal knowledge as to the retention policy of the CCSAO."  Aff. of Robert Ryan, attached as Ex. 11 to Pls.' Mot., ¶ 3.)  Ryan stated that: (1) "[t]he retention policy at CCSAO does not allow for any records

to be maintained as it pertains to *non-jury* trial misdemeanor files;" (2) "[t]he CCSAO does not maintain files of bench trials as it pertains to misdemeanor cases." (See id. at ¶¶ 4-5 (emphasis added).)

The plaintiffs moved to compel the CCSAO's responses to their subpoenas on February 24, 2013. The day before we were scheduled to hear the motion, the CCSAO moved to quash the subpoenas. It attached Ryan's affidavit to the motion and reiterated its position that it "does not maintain non-jury misdemeanor case files." (See CCSAO's Mot. to Quash, dated Feb. 27, 2013, Dkt. 123, at 2.) We granted the plaintiffs' motion to compel, and denied the CCSAO's motion to quash. (See Trans. of Hearing dated Feb. 28, 2013, Dkt. 133, at 6 ("I think that we have to make a record here that will stand up on appeal, if one side or the other appeals, and I have received representations of counsel which I am sure are made in good faith. I don't question that at all.").) Pursuant to our order, the plaintiffs deposed the three ASAs responsible for prosecuting Daniel Martinez in 2012. The plaintiffs state that the ASAs did not remember any statements that the officers may have had made to them about this case, and could not recall whether they had written any notes on their file. (See Pls.' Mot. at 7.) On March 25, 2013, the CCSAO gave the plaintiffs two boxes of documents purporting to be the misdemeanor case files identified in the Records Disposal Certificate. The Certificate states that the records consist of files from 2000-2010. The two

boxes that the CCSAO gave to the plaintiffs contained files from 2001, only.  They did not contain any information relevant to the plaintiffs' prosecutions, which terminated in 2009.  Even as to 2001, the boxes appeared to be incomplete.  According to the plaintiffs, the boxes contained misdemeanor files from: (1) August 2001 for defendants with last names beginning with G-M; and (2) October 2001 for defendants with last names beginning A-G.  (<u>See</u> Pls.' Reply at 3.)  The plaintiffs also contend, "on information and belief," that the boxes contained files related to cases "concluded by bench trial, jury trial, and plea," contrary to the CCSAO's representation that it does not preserve "non-jury" misdemeanor files.  (Pls.' Mot. at 7.)

**D.  Plaintiffs' March 25, 2013 Subpoena**

On March 25, 2013, the plaintiffs subpoenaed all misdemeanor case files "in the manner and form usually retained."  (<u>See</u> Subpoena to Produce Docs., dated Mar. 25, 2013, attached as Ex. 1 to CCSAO's Mot. to Quash, Dkt. 134, at 1.)  In its motion to quash this subpoena, the CCSAO continued to claim that it does not retain files for non-jury misdemeanors.  (<u>See</u> CCSAO's Mot. to Quash at 3.)  It further stated that the materials that the plaintiffs' sought — *all* misdemeanor case files — filled 180 banker's boxes.  (<u>See</u> CCSAO's Mot. for Protective Order, dated Mar. 28, 2013, Dkt. 134, at 2.)  It asked us to modify the subpoena to limit its scope to 2009, only (31 boxes, total).  (<u>Id.</u> at 5.)  At the hearing on the CCSAO's motion, ASA McClellan stated that the materials in the 180

boxes all related to misdemeanor cases tried to a jury. (See Trans. of Proceedings, dated Apr. 3, 2013, attached as Ex. 15 to Pls.' Mot., at 2 ("The Court: So the boxes are all jury trials. Ms. McClellan: That is correct, Your Honor.").)  As the court understands the CCSAO's position, it produced two boxes of documents from 2001 — and not 31 boxes from the relevant year — because the Records Disposal Certificate stated that the files from 2000-2010 amounted to only five cubic feet. (See id. at 3, 5; see also CCSAO's Resp. at 9 ("On March 25, 2013, Plaintiffs' Counsel inspected the 5 cubic feet of misdemeanor case files that the SAO was permitted to destroy as of March 8, 2013 according to the Records Disposal Certificate filed on January 17, 2013.")) The CCSAO has not explained why it chose to produce *those particular boxes*. As for the presence of non-jury files in those boxes, Mr. Kosoglad suggested a theory:

> The Court: These are bench trials?
>
> Mr. Kosoglad: Well, another problem is that they seem to be playing word games here by calling things jury trials and nonjury trials, because the two boxes that we inspected from 2001 contained files from the jury room. Now, in the jury room, some cases go to jury trials and some cases are bench trials. A lot of times in the jury room, defendants waive their rights to a jury trial at the last minute.
>
> This case was in the jury room, and the defendants waived their right to a jury trial at the last minute. So it should be within these files . . . . We believe that it's possible that it was simply misfiled by the state's attorney's office.

(Trans. of Proceedings, dated Apr. 3, 2013, at 4.) He asked the court for permission to inspect all 180 boxes in case the CCSAO had misfiled the documents. ASA McClellan objected that "the amount of resources it's going to take to pull 180 boxes and have them available to counsel is extraordinary." (Id. at 11.) In light of counsel's representation, the court authorized the plaintiffs to conduct a preliminary search to gauge the extent of the undertaking:

> At a mutually-convenient date between today and April 10, 2013, plaintiffs' counsel shall be permitted to visit the warehouse where the 180 boxes of misdemeanor files are maintained and determine what would be involved in segregating the boxes for his inspection. Plaintiffs' counsel is authorized to ask questions of the warehouse personnel in order to determine the difficulty of segregating the boxes. This inspection is subject to the protective order previously entered in this case.

(Minute Entry, dated April 3, 2013, Dkt. 136.) Mr. Kosoglad reported at the next status hearing that the records custodian present at the inspection told him that "the bench trial file should exist and that it ought to be in that room, and that they were unable to locate it." (Trans. of Hearing, dated Apr. 17, 2013, Dkt. 148, at 4.) Mr. Kosoglad estimated that he and his staff could inspect the relevant boxes themselves in only an hour or two. (Id.) They simply needed to open the boxes and quickly scan the folders for the relevant files. (Id.) McClellan insisted it would take longer; that, contrary to Mr. Kosoglad's representation, he would necessarily see sensitive information from

unrelated cases; and repeatedly interrupted the court to interpose argumentative objections. (<u>See, e.g.</u>, <u>id.</u> at 9-10; <u>see also</u> <u>id.</u> at 12 ("Ms. McClellan: Do you suggest that I have someone — The Court: No, no. Ms. McClellan: — from every courtroom be available to answer questions?"); <u>id.</u> at 13 (ASA McClellan, addressing the court: "So that's a yes?").)  The court overruled ASA McClellan's objections and authorized plaintiffs' counsel to inspect the boxes. (<u>See</u> Minute Entry, dated Apr. 17, 2013, Dkt. 137.)

**E.  The April 23, 2013 Inspection**

ASA McClellan was present when Mr. Kosoglad and his staff inspected the file room at 555 W. Harrison on April 23, 2013.  Mr. Kosoglad states that she directed his staff not to take notes, and insisted that they could not do the inspection in the file room itself. (<u>See</u> Pls.' Mot. at 9.)  ASA McClellan called the court for a ruling on the location of the inspection; the court ruled that Mr. Kosoglad and his staff could review the documents in the file room. (<u>Id.</u>)  Mr. Kosoglad states that he and his staff located the misdemeanor files for plaintiffs' 2008/2009 prosecutions in "about 15 minutes." (<u>See</u> Pls.' Mot. at 9.)  They found them in two separate boxes containing files for misdemeanor cases that terminated in February 2010. (<u>Id.</u> at 9.)  In one box, the records were "stuffed into the side of the box" or else "found loose between other case files." (<u>Id.</u> at 9-10.)  In the other box, "the

papers were scattered across the top of the other files." (Id. at 10.)

## II.  The CCSAO's Document Production

On April 25, 2013 and May 3, 2013, the CCSAO produced to plaintiffs' counsel approximately 1,000 documents from the CCSAO's files, and withheld others on privilege grounds. (See Letter from M. McClellan to J. Kosoglad, dated Apr. 25, 2013, attached as Ex. 18 to Pls.' Mot., at 1 ("These items contain all of the discoverable documents in the file."); Pls.' Mot. at 10; CCSAO's "Status on Subpoenas," dated May 3, 2014, Dkt. 141 (attaching a privilege log and asking the court to "find full compliance with all the subpoenas as it pertains to the case at bar").) On May 13, 2013, the plaintiffs moved to compel the CCSAO to produce the documents that it had withheld. (See Pls.' Mot. to Compel, dated May 13, 2013, Dkt. 144.) The CCSAO responded by withdrawing its privilege claim on May 24, 2013. (See Letter from M. McClellan to J. Kosoglad, dated May 24, 2013, Dkt. 151.) It designated all of the previously withheld documents "confidential" pursuant to the protective order that the court had previously entered. (Id.)[4]

_____

[4]/   Two days before producing the documents, ASA McClellan sent an email to Carolyn Hoesly, the court's courtroom deputy, claiming that the court's April 3, 2013 minute order erroneously stated that the court had entered and continued the CCSAO's motion for a protective order. (See Email from M. McClellan to C. Hoesly, dated May 22, 2013, attached as Ex. 20 to Pls.' Mot.) She insisted that the court had granted that portion of its motion. (Id.) Ms. Hoesly clarified that the "protective order" that the court mentioned during the April 3, 2013 hearing was the protective order that the court entered in May 2012, and not the proposed order that CCSAO had attached to its motion. (See Email from C. Hoesly to M. McClellan, dated May 22, 2013, attached as Ex. 21 to Pls.' Mot.) ASA McClellan's interpretation of the hearing transcript was strained, and she should

The plaintiffs challenged that designation and served a subpoena on the CCSAO to inspect the original file. (<u>See</u> Email from J. Kosoglad to M. McClellan, dated May 28, 2013, attached as Ex. 22 to Pls.' Mot. ("Through this notice, we plan to make better copies of the records you provided us, understand how the note fit in with the file, and gain an understanding of how the records and notes were organized when they were discovered during the file room inspection.").) ASA McClellan refused to allow Kosoglad to inspect and copy the documents at his own office. (<u>See</u> Email String between J. Kosoglad and M. McClellan, dated June 5, 2013, attached as Ex. 27 to Pls.' Mot.) At a hearing on July 10, 2013, the court ordered the CCSAO to allow Kosoglad and his staff to inspect the documents in Kosoglad's own office and without any CCSAO official present:

> THE COURT: In the circumstances of this case where the State's Attorney's Office repeatedly assured me that the file did not exist, I think that what we think of as the usual procedures simply don't apply. The examination shall be conducted without the presence of any representative of the State's Attorney's Office. The Court has confidence that no alteration of the file will occur during the examination. Now, do we need to provide for how the file is to be delivered or can you figure that out by yourselves?
>
> MS. MCCLELLAN: At this point, what difference does

---

not have sent an e-mail to court staff to resolve a contested issue. On the other hand, the CCSAO's proposed "confidentiality order," and the protective order that the court executed in 2012, are substantially similar. (<u>Compare</u> Proposed Confi. Order, attached as Ex. 3 to CCSAO's Mot. for a Protective Order, Dkt. 134-3, <u>with</u> Protective Order, dated May 10, 2012, Dkt. 99.) The plaintiffs have not persuaded the court that ASA McClellan sent the e-mail in a bad-faith attempt to gain some advantage in this case.

it make?

THE COURT: You think you can do that —

MS. MCCLELLAN: The integrity is gone, anyway, so it — what difference does it make? Someone will deliver it or he can pick it up.

THE COURT: All right. Maybe you can agree on that.

(See Trans. of Hearing, dated July 10, 2013, Dkt. 162, at 14; Minute Entry, Dkt. 157.) Plaintiffs' counsel reviewed the original file on July 26, 2013 and discovered one page of notes that had not been previously produced. (See Pls.' Mot. at 11-12.)

## DISCUSSION

The plaintiffs seek sanctions against the CCSAO's attorneys pursuant to 28 U.S.C. § 1927 and this court's inherent power to impose sanctions. They also seek sanctions against the CCSAO itself.

## I. Legal Standard

Pursuant to 28 U.S.C. § 1927, this court has discretion to sanction a party's attorneys for "unreasonably and vexatiously" multiplying proceedings:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. "Sanctions against counsel under 28 U.S.C. § 1927 are appropriate when 'counsel acted recklessly, counsel raised

baseless claims despite notice of the frivolous nature of these claims, or counsel otherwise showed indifference to statutes, rules, or court orders.'" <u>Grochocinski v. Mayer Brown Rowe & Maw, LLP</u>, 719 F.3d 785, 799 (7th Cir. 2013) (quoting <u>Kotsilieris v. Chalmers</u>, 966 F.2d 1181, 1184–85 (7th Cir. 1992)).

This court has inherent power to impose sanctions on parties and their counsel. <u>See</u> <u>id.</u> ("The federal courts have the inherent power to impose a wide range of sanctions upon parties for abusive litigation."). "This inherent power, however, is limited to 'cases in which a litigant has engaged in bad-faith conduct or willful disobedience of a court's orders.'" <u>Id.</u> (quoting <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 47 (1991)). "There is no single litmus test for determining what constitutes bad faith, though more than mere negligence is required." <u>Id.</u>

## II. ASA Patricia Fallon

The court concludes that the plaintiffs are not entitled to sanctions against ASA Fallon. On January 29, 2013, Fallon told plaintiffs' counsel that the CCSAO's file for Daniel Martinez's 2012-13 prosecution "was destroyed immediately upon conclusion of the case" pursuant to the CCSAO's standing practice and/or policy. (Pls.' Mot. at 3-4.) As far as the record reveals, Fallon was entirely candid with counsel and the court. The fact that the CCSAO's procedure does not comply with the Local Records Act is beyond the scope of any claim against Fallon in this case. Fallon

did state that the CCSAO preserves misdemeanor files in "special" cases. (<u>See</u> Trans. of Hearing, dated Jan. 30, 2013, at 7 ("What I'm told is certain misdemeanors are kept. I believe misdemeanor DUIs might be kept for a period of time based on the nature of the case, and any other special case that the individual ASA determines they need to retain a file. But a matter of this nature that is more routine would be sent for shredding the same day."); Letter from P. Fallon to J. Kosoglad, dated Feb. 6, 2013, at 1 ("As I stated, the State's Attorney's Office does not *routinely* maintain files related to misdemeanor offenses.") (emphasis added).) The court later learned that Fallon had oversimplified the CCSAO's actual policy. It is important to bear in mind, however, that Fallon's participation in the case — at least so far as the record reveals — related primarily to Daniel Martinez's arrest and prosecution in 2012. She accurately reported that the ASA's responsible for that prosecution had destroyed the documents, and she was appropriately circumspect about the CCSAO's policies more generally. (<u>See</u> Trans. Of Hearing, dated Jan. 30, 2013, at 5-7 (acknowledging that she was unaware of the Local Records Act and reiterating that knowledgeable CCSAO employees told her that the records the plaintiffs sought regarding Daniel Martinez's trial had been destroyed).) She did notify Mr. Kosoglad on March 6, 2013 that the CCSAO was "working to obtain any and all 'Misdemeanor case files after final court hearing' which were scheduled for

destruction on March 8, 2013." (<u>See</u> Letter from P. Fallon to J. Kosoglad, dated Mar. 6, 2013, attached as Ex. 29. to Pls.' Mot.) But there is no evidence indicating whether, or to what extent, Fallon was personally involved in the decision to produce two boxes of misdemeanor files from 2001 in response to the court's order. On this record, the court finds that Fallon's conduct does not warrant sanctions under § 1927. The court likewise declines to exercise its inherent authority to sanction her.

### III. ASA McClellan

The court finds that ASA McClellan recklessly adhered to the position that the documents the plaintiffs sought did not exist. As the court just noted, the CCSAO initially took the position that, except for a few "special" cases, it destroys all misdemeanor case files immediately after trial. (<u>See</u> Trans. of Hearing, dated Jan. 30, 2013, at 7.) ASA McClellan first introduced the distinction between "jury" and "non-jury" misdemeanors in February 2013. The fact that McClellan did not acknowledge that the CCSAO had changed its position created unnecessary confusion. On the other hand, at that point in the proceedings, it appears that both McClellan and Fallon were in the dark about the CCSAO's actual policy. Robert Ryan purported to have personal knowledge of the CCSAO's records-retention policies and declared that the CCSAO did not maintain records for misdemeanors adjudicated by bench trials. It should have become apparent later, however, that Ryan's

statement was inaccurate. First, Kosoglad identified files from misdemeanor bench trials in the "jury room" materials that the CCSAO produced from 2001. Those materials were incomplete and not from the relevant time period, prompting the plaintiffs to subpoena all misdemeanor files. In response to that subpoena, the CCSAO disclosed for the first time that there were 31 boxes of misdemeanor files from the relevant year (2009), and 180 boxes of misdemeanor files, total. McClellan confidently stated at the April 3, 2013 hearing on the CCSAO's motion to quash that these boxes did not contain materials for misdemeanor offenses concluded by bench trials. The most generous inference that we can draw from McClellan's statement is that she did not speak with the custodian of those boxes before making this statement. If she had, she would have learned that they contained materials from misdemeanor bench trials. (See Trans. of Hearing, dated Apr. 17, 2013, Dkt. 148, at 4.) This is reckless conduct. She also recklessly overstated the amount of time and resources it would take to inspect the files, leading the court to order an unnecessary intermediate step to determine whether the plaintiffs' proposed inspection was feasible. (Trans. of Proceedings, dated Apr. 3, 2013, at 11 ("[T]he amount of resources it's going to take to pull 180 boxes and have them available to counsel is extraordinary.").) When Kosoglad reported on April 17, 2014 that he and his team could complete the inspection in an hour or two, McClellan insisted that it could not

be done in that amount of time and raised other argumentative objections. (See Trans. of Hearing, dated Apr. 17, 2013, at 9-10, 12-13.) She continued to obstruct discovery at the inspection itself by refusing Mr. Kosoglad's requests for reasonable accommodations. The court overruled McClellan's objections and, consistent with Mr. Kosoglad's estimate, he and his colleagues found the documents within a matter of minutes.

The CCSAO produced 1,000 responsive documents in April and May 2013, contrary to McClellan's assurances that the documents the plaintiffs sought did not exist. McClellan asserted a questionable privilege claim with respect to a subset of the relevant documents, which she withdrew after plaintiffs moved to compel their production. Given the history of the case to that point, the plaintiffs' subpoena seeking to inspect the original file was eminently reasonable. Nevertheless, McClellan continued to raise bogus objections, which the court overruled. The plaintiffs finally received all the documents that they were seeking on July 26, 2013, mercifully ending the CCSAO's participation in this case. In sum, we conclude that McClellan's conduct was reckless and undertaken in bad faith.

**IV. CCSAO**

There is insufficient evidence in the record to support a finding that the CCSAO's response to the plaintiffs' April 2012 subpoena was deficient. It is a somewhat closer case whether the

CCSAO acted in bad faith when it destroyed the materials associated with Daniel Martinez's 2012 criminal trial. It is troubling that the CCSAO does not adhere to its own 30-day document retention policy in misdemeanor cases. It is also troubling that the prosecuting attorneys in Martinez's 2012 trial apparently knew that he was a plaintiff in a civil lawsuit filed against the arresting officers. On the other hand, Daniel Martinez's case is not the only one in which the CCSAO deviated from its approved retention policy. The CCSAO routinely destroys materials immediately after misdemeanor bench trials at Branch 34. The evidence in the record is insufficient to conclude that the prosecuting attorneys acted in bad faith when they deposited their file in the "Dispo" bin.

We conclude, however, that the CCSAO misstated its document retention policy. First, someone at the CCSAO told ASA Fallon that the office does not retain any misdemeanor files, except in "special" cases. This statement was incomplete and misleading. The CCSAO later took the position that it does not retain *non-jury* misdemeanor files. This statement was simply false. The CCSAO suggests that Mr. Kosoglad was somehow at fault for not suggesting earlier that the documents may have been preserved in the "jury room" (Branch 46). (See CCSAO's Resp. at 10.) The court relies on the CCSAO to make candid and complete statements concerning its own policies. It failed to do so, and needlessly prolonged discovery in this lawsuit. Also, the CCSAO has not offered any plausible

explanation for its decision to produce two incomplete boxes from 2001 for counsel's inspection. The review would have been a complete waste of counsel's time if he had not discovered during the course of the inspection that, in certain cases, the CCSAO maintained records for misdemeanor cases tried before a judge.

Viewed as a whole, it is apparent that the CCSAO's discovery responses were not merely negligent. The CCSAO can only act through its agents, and McClellan was its agent for purposes of responding to this discovery. Her treatment of counsel, and her in-court demeanor, speak volumes about the CCSAO's strategy in this case. The CCSAO divulged information about its policies only when plaintiffs' counsel confronted it with evidence contradicting its prior statements. At each step of the process, McClellan attempted to impose onerous restrictions on discovery. To be clear, the court does not fault the CCSAO for failing to locate misplaced documents. It faults the CCSAO for obstructing the plaintiffs' and the court's attempts to understand the true state of affairs. In sum, court concludes that the CCSAO acted vexatiously and in bad faith.

## V.  Relief

The court concludes that the plaintiffs are entitled to excess attorneys fees and costs reasonably incurred because of the respondents' misconduct during the time period February 24, 2013 to July 26, 2013. The court denies the plaintiffs' request for

discovery and an evidentiary hearing. First, the plaintiffs contend that the City of Chicago was responsible for misplacing the plaintiffs' misdemeanor files. (See Pls.' Supp. at 3.) Even if CCSAO witnesses could shed light on this issue, it is academic at this point because the plaintiffs no longer seek relief from the City of Chicago. With respect to Daniel Martinez's 2012 prosecution, the plaintiffs have already deposed the relevant ASA's. (See Pls.' Mot. at 7.) There is no reason to think that they would provide new or different information about their decision to destroy documents from that case. Finally, the CCSAO's shifting positions regarding its document-retention policies, and McClellan's obstructive conduct, are already well documented. Any further discovery on these issues would needlessly prolong this case. Finally, the court denies the plaintiffs' request to declassify certain documents that the CCSAO designated "confidential" pursuant to the protective order in this case. (See Mot. to Declassify, Dkt. 160; Minute Entry, dated Mar. 5, 2014, Dkt. 213 (noting that the plaintiffs had withdrawn the motion given the court's intention to address the issue together with the sanctions motion).) Neither party has given the court copies of the relevant documents to determine whether, or to what extent, the documents are entitled to protection. Moreover, it is highly unlikely that declassifying the documents at this point in the case would serve any practical purpose.

## CONCLUSION

The plaintiffs' motion for sanctions is granted in part and denied in part. The court denies the motion as to ASA Patricia Fallon, denies the plaintiffs' request for discovery and an evidentiary hearing, and denies plaintiffs' request to declassify documents. The court grants the motion for sanctions as to ASA Mary McClellan and the CCSAO. By December 19, 2014, the plaintiffs shall file a memorandum, supported by time records, indicating what fees and costs it attributes to the respondents' sanctionable misconduct during the period from February 24, 2013 to July 26, 2013. ASA McClellan and the CCSAO shall respond to the plaintiffs' submission by January 19, 2015. The plaintiffs may reply by February 2, 2015.

DATE:          November 20, 2014


ENTER:      _____
            John F. Grady, United States District Judge